AO 106 (Rev. 04/10)  Application for a Search Warrant

AUSA Dominguez

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>2089 Eddystone Ave., Columbus, Ohio 43224 and curtilidge of. | )<br>)<br>)<br>)<br>)<br>) |

Case No. 2:19-mj-887

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

2089 Eddystone Avenue, Columbus, Ohio 43224  and curtilidge of. Further described in Attachment A

located in the ———— Southern ———— District of ———— Ohio ————, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1956 (a) (h)<br>21 U.S.C. 841(a) 846 | Laundering of Monetary Instruments and Money Laundering Conspiracy<br>Possess with Intent to Distribute a Controlled Substance and Drug Conspiracy. |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Colin Ginley, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____11/12/2019_____

_____
*Judge's signature*

City and state: Columbus, Ohio

Honorable Chelsey M. Vascura
*Printed name and title*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, **Colin J. Ginley**, being duly sworn, depose and state that:

I am a Special Agent (SA) with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since May 14, 2018. Therefore, I am a law enforcement officer as defined in 18 U.S.C. §2510(7). I am presently assigned to the ATF Columbus Field Division. I completed the Criminal Investigator Training Program and the ATF Special Agent Basic Training Academy at the Federal Law Enforcement Training Center, located in Glynco, Georgia, where I received specialized training in the investigation of federal crimes involving firearms, alcohol and tobacco diversion, arson and explosives, and narcotics.

I have participated in numerous federal investigations including federal firearms violations. During these investigations, I participated in various types of investigative techniques, to include electronic surveillance, informants, and controlled purchases of firearms and narcotics from suspects. I participated in physical surveillance operations and in the execution of multiple federal arrest warrants. I also know how to analyze information resulting from traditional record searches and reviewing case files. As a result of my training and experience, I am familiar with state and federal laws pertaining to firearms and narcotics violations, among other offenses. Furthermore, I am familiar with armed narcotics trafficking, narcotics trafficking, and narcotics trafficking conspiracy techniques utilized by individuals involved in the aforementioned crimes.

I am one of the Lead Investigators in this investigation. I have consulted with the other Lead Investigators regarding this investigation and have probable cause to believe the following is true. Throughout this affidavit, reference to "investigators" specifically refers to criminal investigators.

Based on our ongoing investigation, your affiant believes probable cause exists to find that **Gage DAVIS**, **Billy LEWIS** and others, are engaged in a conspiracy involving narcotics distribution. Based on your Affiant's knowledge, training, and experience, drug traffickers often use, possess, and, carry one or more firearms to protect their drugs and drug proceeds.

Your affiant further believes that evidence and instrumentalities of this activity can be found in the known residence of **LEWIS** located at: 2089 Eddystone Avenue, Columbus, Ohio 43224.

1

## PURPOSE OF AFFIDAVIT

1. Your affiant submits there is probable cause to believe that evidence of criminal activity, namely criminal violations of the federal criminal code Title 18 United States Code. 1956 (a)(1)(A)(I), Title 18 United States Code. 1956 (a)(1)(B)(i), Title 18 United States Code. 1956 (h), Title 21 United States Code 841, Title 21 United States Code 846, and Title 18, United States Code, Section 924(c) are located at 2089 Eddystone Avenue, Columbus, Ohio 43224.

2. Because this affidavit is offered for the limited purpose of establishing probable cause in support of this warrant, it does not set forth all facts known to this investigation.

## LOCATIONS TO BE SEARCHED

2089 Eddystone Avenue, Columbus, Ohio 43224 hereafter **EDDYSTONE AVENUE TARGET RESIDENCE,** to include any out buildings present on the curtilage of the property further described in Attachment A

## ITEMS TO BE SEIZED

See Attachment B.

## PROBABLE CAUSE

3. The information in this affidavit is a compilation of information developed during the ongoing criminal investigation that started in 2019 of the above-described violations. The investigation has involved investigators of the ATF, Columbus Division of Police, Knox County Sheriff's Office, Morrow County Sheriff's Office, and the Ohio State Highway Patrol. Investigators' knowledge is derived from their own personal observations and from a variety of credible sources, including witness interviews, review of public records, police reports, surveillance and information provided to them by other law enforcement and regulatory personnel. This affidavit is intended to show that there is sufficient probable cause for the requested search warrant and does not purport to set forth all investigators' knowledge of the investigation into this matter.

4. Your affiant believes the investigation to date shows that **Gage DAVIS** and **Billy LEWIS** are involved in illegal activities consisting of Possession with the Intent to Distribute and Distribution of a Controlled Substance, and a Narcotics Conspiracy.

2

5. On or about August 27, 2019, ATF investigators met with an ATF Confidential Informant (CI) regarding armed narcotics traffickers **Gage DAVIS** and **Billy LEWIS**. The CI advised that **DAVIS** and **LEWIS** operate a drug trafficking organization (DTO) that distributes methamphetamine. ATF investigators started working with the CI in the summer of 2019. The CI has provided reliable information in the past that has been corroborated by ATF investigators.

6. SA Ginley conducted a Criminal History check on **LEWIS**. (FBI #: 529774JB0), which revealed that he has multiple arrests and criminal convictions, including, but not limited to the following:

   - In Franklin County Court of Common Pleas, Case No. 98 CR 005764, with a Judgement Entry date of on or about September 30, 1998, Failure to Comply O.R.C 2921.331, Felony of the Fourth Degree.

   - In Franklin County Court of Common Pleas, Case No. 08 CR 003260, with a Judgement Entry date of on or about April 23, 2008, Theft, O.R.C 2913.02, Felony of the Fourth Degree.

   - In Franklin County Court of Common Pleas, Case No. 10 CR 006412, with a Judgement Entry date of on or about July 17, 2010, Theft, O.R.C 2913.02, Felony of the Fourth Degree.

   - In Delaware County Court of Common Pleas, Case No. 10 CR 120594, with a Judgement Entry date of on or about December 15, 2010, Receiving Stolen Property, O.R.C 2913.51A, Felony of the Fourth Degree.

   - In Morrow County Municipal Court, Case No. 2014CRB8713, with a Judgement Entry date of on or about May 7, 2015, Domestic Violence, O.R.C 2919.25A, Misdemeanor of the First Degree.

7. SA Ginley conducted a Criminal History check on **DAVIS** (FBI #: CLV0M09T8), which revealed that he has arrests and a criminal conviction, including the following:

   - In Morrow County Court of Common Pleas, Case No. 2018 CR 0154, with a Judgement Entry date of on or about April 12, 2019 Possession of Drugs, O.R.C 2925.11AC2A, Felony of the Fifth Degree.

## NARCOTICS ACTIVITIES

8. On or about August 27, 2019, ATF investigators discussed with the CI described in Paragraph (5) regarding the DTO involving **DAVIS** and **LEWIS**. The CI advised that **DAVIS** and

3

LEWIS were both violent and traffic in methamphetamine in the area of Columbus, Ohio. The ATF CI advised ATF investigators that **DAVIS** and **LEWIS** have a Mexican drug supplier regarding methamphetamine. The ATF CI advised ATF investigators that **DAVIS** always carries a firearm on his person and on more than one occasion has threatened people with a firearm. Additionally, the ATF CI advised ATF investigators that **DAVIS** has on more than one occasion offered to sell firearms including, but not limited to, a 9mm semi-automatic handgun and a revolver with a pearl handle.

9. On or about August 27, 2019, ATF Investigators identified and began monitoring the facebook profiles belonging to **DAVIS** and **LEWIS**. ATF Investigators identified the open facebook profile of "Gage Mcdole" which displayed a white male who was immediately identified as Gage **DAVIS**. Additionally, ATF Investigators identified the open facebook profile of "Billy **LEWIS**" which displayed a white male who was immediately identified as Billy **LEWIS**.

10. On or about September 4, 2019, the CI made contact with **DAVIS**. **DAVIS** confirmed with the ATF CI that he would agree to provide a specific amount of methamphetamine to the ATF CI for an agreed upon purchase price. The pre-arranged deal between DAVIS and the ATF CI ultimately did not occur and DAVIS advised the ATF CI that it could occur at another time.

11. On or about September 5, 2019, the CI made contact with **DAVIS**. **DAVIS** confirmed with the ATF CI that he would agree to provide a specific amount of methamphetamine to the ATF CI for an agreed upon purchase price. An ATF Undercover Agent (UCA) was present with the ATF CI during the transaction. The ATF CI was checked for contraband on his/her person, which revealed negative results and was provided with pre-recorded Government funds and a recording device. The UCA and ATF CI entered an Undercover Vehicle (UCV) and arrived at a pre-arranged meet location that was coordinated in agreement with **DAVIS**. Surveillance units observed **DAVIS** walk up and enter the UCV. **DAVIS** provided the ATF CI with an amount of methamphetamine in exchange for pre-recorded Government funds, provided by the ATF CI to **DAVIS**. **DAVIS** then exited the UCV. The UCA then took custody of the purchased methamphetamine. The ATF CI was again checked for contraband on his/her person, which revealed negative results. This transaction was audio and video recorded. The purchased amount of methamphetamine from **DAVIS** was field tested utilizing a field-testing kit for methamphetamine. The field test resulted in a positive test for methamphetamine and was submitted to the Columbus Police Crime Laboratory under CPCL-2019-06173. The results of the examination revealed the presence of methamphetamine.

12. On or about September 13, 2019, ATF Task Force Officer (TFO) Sam Chappell applied for and received a federal search warrant for cell phone location data for phone number (740) 390-8818, identified as the primary phone number for **DAVIS**. The Search warrant was then executed by submitting it to T-Mobile and the ATF Columbus Field Office began receiving location results.

13. On or about September 13, 2019, the CI made contact with **DAVIS**. **DAVIS** confirmed with the ATF CI that he would agree to provide a specific amount of methamphetamine to the ATF

CI for an agreed upon purchase price. The ATF CI was checked for contraband on his/her person, which revealed negative results and was provided with pre-recorded Government funds and a recording device. The UCA and ATF CI entered an UCV and arrived at a pre-arranged meet location that was coordinated in agreement with **DAVIS**. The UCA exited the UCV and was not present during the transaction. Surveillance units observed **DAVIS** walk up and enter the UCV. **DAVIS** provided the ATF CI with an amount of methamphetamine in exchange for pre-recorded Government funds, provided by the ATF CI to **DAVIS**. **DAVIS** then exited the UCV and entered a Ford Taurus Wagon, teal in color, bearing Ohio plate "HSA 5570," with listed owner Sierra McDole, White/Female, DOB: 9/17/1998 and registered on a 2003 ford escape, Silver in color. The vehicle was observed with a black cargo rack and multiple bumper stickers in the rear hatch. ATF Investigators subsequently identified the driver as **LEWIS**. ATF Investigators also identified the Ohio license plate to not match the listed vehicle. At the conclusion of the transaction the UCA then took custody of the purchased methamphetamine. The ATF CI was again checked for contraband on his/her person, which revealed negative results. This transaction was audio and video recorded. Your affiant listened to the audio and video regarding the narcotics transaction between the ATF CI and **DAVIS** and confirmed the audio and video of the transaction to be consistent with the debrief of the ATF CI. The purchased amount of methamphetamine from **DAVIS** was field tested utilizing a field-testing kit for methamphetamine. The field test resulted in a positive test for methamphetamine and was submitted to the Columbus Police Crime Laboratory under CPCL-2019-06173. The results of the examination revealed the presence of methamphetamine.

14. Between September 13, 2019 and September 19th, 2019 ATF investigators conducted physical surveillance of **DAVIS** which coincided with real-time technical surveillance relevant to **DAVIS'** phone PING locations. During this time period ATF investigators were able to identify **DAVIS'S** home address at the location of 1767 Brentnell Avenue, Columbus, Ohio 43219. Additionally, ATF investigators were able to identify the Ford Taurus Wagon, teal in color, bearing Ohio plate "HSA 5570", which was previously operated by **LEWIS** to convey **DAVIS** to the aforementioned drug transaction being located on the property of 1767 Brentnell Avenue. ATF Investigators also verified **DAVIS** at several locations, which coincided with the technical surveillance obtained in real time.

15. On or about September 19, 2019, the ATF CI made contact with **DAVIS**. **DAVIS** confirmed with the ATF CI that he would agree to provide a specific amount of methamphetamine to the ATF CI for an agreed upon purchase price. An ATF UCA was present with the ATF CI during the transaction. ATF CI was checked for contraband on his/her person which revealed negative results and provided pre-recorded Government funds and a recording device. The UCA and ATF CI entered an Undercover Vehicle (UCV) and arrived at a pre-arranged meet location that was coordinated in agreement with **DAVIS**. ATF Investigators conducted real-time technical surveillance relevant to **DAVIS'** phone, which displayed a PING location within 9 meters (hereinafter "m") of his identified home address of 1767 Brentnell Avenue, Columbus, Ohio 43219. A short time later, Surveillance units observed **DAVIS** and **LEWIS** arrive at the agreed upon meet location. Surveillance units observed **DAVIS** as the front passenger and **LEWIS** as the operator of a black, GMC Envoy bearing Ohio plate "HUW 8246." Surveillance units

then observed **DAVIS** exit the vehicle walk up and enter the UCV. **DAVIS** provided the ATF CI with an amount of methamphetamine in exchange for pre-recorded Government funds, provided by the ATF CI to **DAVIS**. **DAVIS** then exited the UCV and was observed by surveillance units re-entering the front passenger seat of the vehicle **LEWIS** was operating. It should be noted that during this drug transaction between the UCA, **DAVIS** , and **LEWIS**, ATF Investigators were able to confirm real-time technical surveillance relevant to **DAVIS'** phone which displayed a PING location within 11m of the pre agreed up meet location. The UCA then took custody of the purchased methamphetamine. The ATF CI was again checked for contraband on his/her person, which revealed negative results. This transaction was audio and video recorded. The purchased amount of methamphetamine from **DAVIS** was field tested utilizing a field-testing kit for methamphetamine. The field test resulted in a positive test for methamphetamine and was submitted to the Columbus Police Crime Laboratory under CPCL-2019-06173. The results of the examination revealed the presence of methamphetamine. Immediately following the drug transaction, ATF Investigators conducted real-time technical surveillance relevant to **DAVIS** ' phone which displayed a PING location within 8m of his identified home address of 1767 Brentnell Avenue, Columbus, Ohio 43219. The information was received in a timely manner relative to the times of the drug transaction. Because of this, ATF Investigators were able to ascertain that **DAVIS** was at his home address of 1767 Brentnell Avenue, Columbus, Ohio 43219 prior to the drug transaction and immediately following the drug transaction.

16. On or about September 25, 2019, the ATF UCA made contact with **DAVIS**. **DAVIS** confirmed with the ATF UCA that he would agree to provide a specific amount of methamphetamine to the ATF UCA for an agreed upon purchase price. The ATF UCA had pre-recorded Government funds and recording devices. The UCA entered the UCV and arrived at a pre-arranged meet location that was coordinated in agreement with **DAVIS**. ATF Investigators conducted real-time technical surveillance relevant to **DAVIS'** phone, which displayed a PING location within 14m of his identified home address of 1767 Brentnell Avenue, Columbus, Ohio 43219. Surveillance Units then observed **DAVIS** and **LEWIS** arrive at the meet location. Surveillance units observed **DAVIS** as the front passenger and **LEWIS** as the operator of a black, GMC Envoy bearing Ohio plate "HUW 8246." Surveillance units then observed the ATF UCA exit the UCV and enter the vehicle being operated by **LEWIS**. The ATF UCA immediately identified **DAVIS**, **LEWIS** and another unknown individual inside the vehicle. **DAVIS** provided the ATF UCA with an amount of methamphetamine in exchange for pre-recorded Government funds, provided by the ATF UCA to **DAVIS**. **DAVIS** and **LEWIS** both counted the pre-recorded government funds and jointly took possession of the pre-recorded Government funds. The ATF UCA then exited the vehicle and was observed by surveillance units re-entering the UCV. It should be noted that during this drug transaction between the UCA, **DAVIS**, and **LEWIS**, ATF Investigators were able to confirm real-time technical surveillance relevant to **DAVIS'** phone which displayed a PING location within 19m of the pre agreed up meet location. This transaction was audio and video recorded. The purchased amount of methamphetamine from **DAVIS** was field tested utilizing a field-testing kit for methamphetamine. The field test resulted in a positive test for methamphetamine. Immediately following the drug transaction, ATF Investigators conducted real-time technical

surveillance relevant to **DAVIS'** phone which displayed a PING location within 19m of his identified home address of 1767 Brentnell Avenue, Columbus, Ohio 43219. The information was received in a timely manner in that ATF Investigators were able to ascertain that **DAVIS** was at his home address of 1767 Brentnell Avenue, Columbus, Ohio 43219 immediately prior to the drug transaction and immediately following the drug transaction.

17. On or about September 26, 2019, ATF Investigators observed activity on **DAVIS'** facebook profile of "Gage mcdole." More specifically, ATF Investigators observed a facebook post by **DAVIS,** as "Gage mcdole", and a comment by **DAVIS,** which stated, "I don't carry a wallet ☺ nothing worth anything on my person ever. Maybe a couple dollars and my pistol and they stay in my hand always."

18. On or about October 3, 2019, the ATF UCA made contact with **DAVIS. DAVIS** confirmed with the ATF UCA that he would agree to provide a specific amount of methamphetamine to the ATF UCA for an agreed upon purchase price. The ATF UCA had pre-recorded Government funds and recording devices. The UCA entered UCV and arrived at a pre-arranged meet location that was coordinated in agreement with **DAVIS.** A recorded call was made by the UCA to **DAVIS** to confirm the meet location. It should be noted that during the call **DAVIS** mentioned, "I gotta run to the house and grab the shit real quick." The ATF UCA understood this to be **DAVIS** referencing the pre-agreed upon methamphetamine. Subsequent to this call, ATF Investigators observed real-time technical surveillance relevant to **DAVIS'** phone, which displayed a PING location of 41m on Brentnell Avenue, which was approximately 500 yards from his home address of 1767 Brentnell Avenue, Columbus, Ohio 43219. A short time later, Surveillance units observed **DAVIS** and **LEWIS** arrive at the agreed upon meet location. Surveillance units observed **DAVIS** as the front passenger and **LEWIS** as the operator of a black, Hyundai sedan, bearing Ohio plate "HWK9709." Surveillance units then observed the **DAVIS** and **LEWIS** exit their vehicle and enter the UCV. The ATF UCA immediately identified **DAVIS** and **LEWIS. DAVIS** provided the ATF UCA with an amount of methamphetamine in exchange for pre-recorded Government funds, which were provided by the ATF UCA to **DAVIS. DAVIS** and **LEWIS** both counted the pre-recorded government funds and jointly took possession of the pre-recorded Government funds. **DAVIS** and **LEWIS** then exited the vehicle and were observed by surveillance units re-entering their vehicle. It should be noted that during this drug transaction between the UCA, **DAVIS** , and **LEWIS,** ATF Investigators were able to confirm real-time technical surveillance relevant to **DAVIS'** phone which displayed a PING location within 8m of the pre-agreed upon meet location. This transaction was audio and video recorded. The purchased amount of methamphetamine from **DAVIS** was field tested utilizing a field-testing kit for methamphetamine. The field test resulted in a positive test for methamphetamine.

19. On or about October 3, 2019, **DAVIS** made contact with the ATF UCA and stated, "I got three whole ones on me right now…" The ATF UCA understood this to be **DAVIS** referencing a quantity of methamphetamine. During this communication, ATF Investigators observed real-time technical surveillance relevant to **DAVIS'** phone, which displayed a PING location of 19m to his home address of 1767 Brentnell Avenue, Columbus, Ohio 43219.

20. On or about October 18, 2019, the ATF UCA made contact with **DAVIS**. **DAVIS** confirmed with the ATF UCA that he would agree to provide a specific amount of methamphetamine to the ATF UCA for an agreed upon purchase price. The ATF UCA possessed pre-recorded Government funds and a recording device. The UCA entered a UCV and arrived at a pre-arranged meet location that was coordinated in agreement with **DAVIS**. A short time later, Surveillance units observed **DAVIS** and **LEWIS** arrive at the agreed upon meet location. Surveillance units observed **DAVIS** as the front passenger and **LEWIS** as the operator of a black, GMC Envoy bearing Ohio plate "HUW 8246". Surveillance units then observed **DAVIS** exit the vehicle walk up and enter the UCV. **DAVIS** provided the ATF UCA with an amount of methamphetamine in exchange for pre-recorded Government funds, which were provided by the ATF UCA to **DAVIS**. **DAVIS** then exited the UCV and was observed by surveillance units re-entering the front passenger seat of the vehicle **LEWIS** was operating. This transaction was audio and video recorded. The purchased amount of methamphetamine from **DAVIS** was field tested utilizing a field-testing kit for methamphetamine. The field test resulted in a positive test for methamphetamine.

21. It should be noted that between September 5, 2019 and October 18th, 2019, approximately 548.35 total grams of methamphetamine were purchased from **DAVIS** and/or **DAVIS** and **LEWIS** from an ATF CI and/or an ATF UCA.

22. On or about May 15, 2019, Columbus Division of Police arrived at 2089 Eddystone Avenue to serve an arrest warrant on **LEWIS**. **LEWIS** was wanted for violation of a protection order. On that day, **LEWIS** was taken into custody at 2089 Eddystone Avenue and arrested on his warrants relating to Case No. 19-8796 and Case No. 19-8738.

23. On or about November 1, 2019, Billy LEWIS was arrested at 1767 Brentnell Avenue, Columbus, Ohio 43219 for Domestic Violence and Menacing, CPD Report Number 190920962-001.

24. It should be noted that relevant to the above CPD arrest, in Franklin County Municipal Case No. 2019 CR B 020254, filed on November 1st, 2019, Defendant Billy **LEWIS** listed a home address of 2089 Eddystone Avenue, Columbus, Ohio 43211.

25. On or about November 5, 2019, your affiant conducted surveillance at 2089 Eddystone Avenue, Columbus, Ohio 43224. Your affiant observed the Ford Taurus Wagon, teal in color, bearing Ohio plate "HSA 5570," parked in front of the residence. This same vehicle has been utilized by **LEWIS** on at least one prior occasion referenced herein.

26. Based on your affiant's knowledge, training, and experience in investigating armed narcotics traffickers, and narcotics trafficking conspiracies, your affiant knows the following:

a) It is my experience that currency transactions that are conducted enable those individuals involved with large-scale criminal activity and money launderers to invest the cash proceeds of their illicit businesses into an asset, thereby legitimizing the currency;

b) That those individuals involved with large scale criminal activity are known to trade items in their possession for items of monetary value;

c) That those individuals involved with large scale criminal activity conduct various transactions, including the purchase of vehicles and real estate, in order to create an appearance that their income is derived from legitimate sources;

d) That those individuals involved with large scale criminal activity must maintain, on hand, large amounts of United States currency in order to maintain and finance their ongoing criminal enterprise;

e) That those individuals involved with large scale criminal activity and money launderers maintain books, records, receipts, notes, ledgers, and other papers relating to the sale of narcotics, and the purchase of assets, including vehicles, real estate and other financial instruments;

f) That the aforementioned books, records, receipts, notes, ledgers, etc., are commonly maintained where the individuals have ready access to them, i.e., homes, businesses, and automobiles;

g) That it is common for those individuals involved with large scale criminal activity and money launderers to secrete proceeds of their criminal sales, and records of illicit transactions, sources, and customers, in secure locations within their residences, businesses, garages, storage buildings, and safety deposit boxes for ready access, and also to conceal such items from law enforcement authorities;

h) That persons involved in such criminal activity and laundering conceal caches of currency, financial instruments, precious metals, jewelry, other items of value and/or proceeds of illicit transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money made from engaging in their criminal activities, in their residences, businesses, garages, storage buildings, automobiles, and safety deposit boxes;

i) That those individuals involved with large scale criminal activity and money launderers commonly maintain addresses or telephone numbers in books, papers, pagers, or cellular phones (and often have multiple cellular phones and pagers) which reflect names, addresses, text messages to, and/or telephone numbers for their associates in the criminal organization, even if said items may be in code;

9

j) That those individuals involved with large scale criminal activity and money launderers frequently take, or cause to be taken, photographs of themselves, their associates, their property, and their product, and that these individuals usually maintain these photographs in their residences, businesses, and automobiles;

k) That when those individuals involved with large scale criminal activity and money launderers amass large monetary proceeds from the sale of their ill-gotten gains, they attempt to legitimize these profits by utilizing foreign and domestic banks and their attendant services, including securities, cashier's checks, money drafts, wire transfers, letters of credit, brokerage houses, real estate, shell corporations, business fronts, and other methods;

l) That those individuals involved with large scale criminal activity and money launderers sometimes store documents and records relating to their co-conspirators, customers, money, and assets on computer hardware and software, the contents of which frequently yield evidence of their criminal activity and money laundering crimes;

m) That courts have recognized that unexplained wealth is probative evidence of criminal activity in which transactions involving large amounts of cash and high profit margins are common, to include those individuals involved with large scale criminal activity;

n) That it is common for those individuals involved with large scale criminal activity and money launderers to conceal and store items related to their criminal activity and money laundering within safes, footlockers, boxes, containers and other hidden compartments, and within places that they own or over which they exercise control such as residences, businesses, and automobiles;

o) Individuals involved with large scale criminal activity store records of associated criminal acquisition/disposition documents at their residences, businesses, and/or in their vehicles.

## CONCLUSION

27. Based upon the above information, your affiant believes probable cause exists that now contained within the premises of 2089 Eddystone Avenue, Columbus Ohio are the following:

a. Books, records, notes, ledgers, and other papers relating to the transportation, purchase, distribution, packaging, and sale of controlled substances, which may be maintained in either paper form or on computers, computer disks, CD-ROM disks, DVD disks, portable storage devices, or other related equipment;

b. Books, records, receipts, notes, ledgers, airline tickets, money orders, and other records related to the receipt, expenditure and concealment or other disposition of income, which may be maintained in either paper form or on computers, computer disks, CD-ROM

10

disks, DVD disks, portable storage devices, or other related equipment, relating to the distribution of controlled substances;

c. Books, papers, and documents and information contained within cellular phones and electronic organizers reflecting names, addresses, telephone numbers, and other contact or identification information of participants in drug trafficking activities;

d. Cash, currency, currency counters, financial instruments, and records relating to controlled substances income and expenditure of proceeds of drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money made from engaging in drug trafficking activities;

e. Pagers, cellular phones, electronic organizers, caller identification devices, answering machine devices, and other communication devices belonging to Billy **LEWIS** and to search the contents of the listed devices at a later time;

f. Photographs, and videotape of participants in drug trafficking activities, and of property acquired from the sale of controlled substances or money laundering;

g. Bank and other financial institution records consisting of savings, loans, records of deposits, statements, letters of credit, money orders, cashier checks, passbooks, cancelled checks, certificates of deposit, lease agreements, customer account information, income and expense summaries, cash disbursement journals, financial statements, state and federal income tax returns, information related to the receipt and other disposition of income, and related financial information pertaining to the purchase, lease, sale or other disposition of real or personal property, including real estate, automobiles, jewelry, and furniture;

h. United States currency, precious metals, jewelry, and financial instruments, as well as books and records regarding the acquisition, use and disposition of such items of value;

i. Safe deposit box lease agreements and safe deposit keys;

j. Rental/lease agreements for 2089 Eddystone Avenue. Columbus, Ohio 43219;

k. Proof of residency, including but not limited to cancelled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents and keys; and

l. Any safes, vaults, or secured storage equipment that could secret any of the above listed items, and the contents therein.

11

In view of the above-mentioned facts, and in my training and experience in the investigation of armed narcotics trafficking and narcotics trafficking conspiracies, I have probable cause to believe that contained within the **2089 EDDYSTONE AVENUE TARGET RESIDENCE** is:

Evidence of a crime, contraband, fruits of crime, instruments of the crime, and property illegally possessed and intended for use in committing a crime, relating to violations of Title 18 United States Code. 1956 (a)(1)(A)(I), Title 18 United States Code. 1956 (a)(1)(B)(i), Title 18 United States Code. 1956 (h), Title 21 United States Code 841, Title 21 United States Code 846, and Title 18, United States Code, Section 924(c).

And that Billy **LEWIS** is the current known resident of **2089 EDDYSTONE AVENUE TARGET RESIDENCE.**

_____
Colin J. Ginley
Special Agent, ATF

Sworn to and subscribed before me this ____12____ day of November 2019 in Columbus, Ohio.

_____
Honorable Chelsey M. Vascura
United States Magistrate Judge
Southern District of Ohio

12

**ATTACHMENT A**
**LOCATION TO BE SEARCHED:**

2089 Eddystone Ave., Columbus, Ohio 43224, described as a two-story single family home, with white siding and black trim. The numbers "2089" are affixed to the house adjacent to the front door in black letters. The front of the home is depicted in this photograph:



## ATTACHMENT B
## ITEMS TO BE SEIZED:

Based on the foregoing, I respectfully submit that there is probable cause to believe that the following items will be found at 2089 Eddystone Ave., Columbus, Ohio 43224:

1. Books, records, notes, ledgers, and other papers relating to the transportation, purchase, distribution, packaging, and sale of controlled substances, which may be maintained in either paper form or on computers, computer disks, CD-ROM disks, DVD disks, portable storage devices, or other related equipment;

2. Books, records, receipts, notes, ledgers, airline tickets, money orders, and other records related to the receipt, expenditure and concealment or other disposition of income, which may be maintained in either paper form or on computers, computer disks, CD-ROM disks, DVD disks, portable storage devices, or other related equipment, relating to the distribution of controlled substances;

3. Books, papers, and documents and information contained within cellular phones and electronic organizers reflecting names, addresses, telephone numbers, and other contact or identification information of participants in drug trafficking activities;

4. Cash, currency, currency counters, financial instruments, and records relating to controlled substances income and expenditure of proceeds of drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money made from engaging in drug trafficking activities;

5. Pagers, cellular phones, electronic organizers, caller identification devices, answering machine devices, and other communication devices belonging to Billy **LEWIS** and to search the contents of the listed devices at a later time;

6. Photographs, and videotape of participants in drug trafficking activities, and of property acquired from the sale of controlled substances or money laundering;

7. Bank and other financial institution records consisting of savings, loans, records of deposits, statements, letters of credit, money orders, cashier checks, passbooks, cancelled checks, certificates of deposit, lease agreements, customer account information, income and expense summaries, cash disbursement journals, financial statements, state and federal income tax returns, information related to the receipt and other disposition of income, and related financial information pertaining to the purchase, lease, sale or other disposition of real or personal property, including real estate, automobiles, jewelry, and furniture;

8. United States currency, precious metals, jewelry, and financial instruments, as well as books and records regarding the acquisition, use and disposition of such items of value;

9. Safe deposit box lease agreements and safe deposit keys;

10. Rental/lease agreements for 2089 Eddystone Avenue. Columbus, Ohio 43219;

11. Proof of residency, including but not limited to cancelled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents and keys; and

12. Any safes, vaults, or secured storage equipment that could secret any of the above listed items, and the contents therein.